## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARMONI MASUD JOHNSON, | : | CIVIL ACTION NO. 1:18-CV-2359 |
| | : | |
| Petitioner | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT THOMAS | : | |
| MCGINLEY, PA STATE ATTORNEY | : | |
| GENERAL, | : | |
| | : | |
| Respondents | : | |

### MEMORANDUM

Petitioner Armoni Masud Johnson ("Johnson") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. 1). For the reasons discussed below, the court will deny the petition.

### I. Factual Background & Procedural History

On August 7, 2011, Johnson stabbed Justin Barna, an individual who had previously purchased drugs from Johnson. On November 15, 2011, an information was filed in the Luzerne County Court of Common Pleas charging Johnson with two counts of aggravated assault, two counts of criminal conspiracy, and one count of burglary. Commonwealth v. Johnson, No. CP-40-CR-0002713-2011 (Pa. Ct. Com. Pl. Luzerne Cty.). On August 6, 2012, Johnson entered a guilty plea. Id. However, on October 12, 2012, the trial court granted Johnson's request to withdraw his guilty plea and the matter proceeded to trial. Id. Prior to the commencement of trial, the

Commonwealth withdrew the criminal conspiracy charges. <u>Id.</u> On July 16, 2013, a jury trial commenced. <u>Id.</u> At the conclusion of trial, the jury found Johnson guilty of two counts of aggravated assault and not guilty of burglary. <u>Id.</u> On October 11, 2013, the trial court sentenced Johnson to 66 to 156 months' imprisonment, followed by 60 months' special probation, on count one of aggravated assault, and 15 to 60 months' imprisonment on count two of aggravated assault, to run concurrently with count one. <u>Id.</u>

Johnson filed a timely direct appeal to the Pennsylvania Superior Court. (Doc. 31-1 at 7-18). On direct appeal, Johnson raised the following issues: (1) whether the trial court erred in denying Johnson's motion to dismiss pursuant to Rule 600; (2) whether the trial court erred in allowing the Commonwealth to present evidence of prior bad acts; (3) whether the trial court erred by instructing the jury on a charge of causing or attempting to cause serious bodily injury because the Commonwealth did not introduce expert medical evidence to sustain such an instruction; and (4) whether his conviction for aggravated assault was against the weight of the evidence. (Doc. 31-1 at 23). On July 30, 2015, the Superior Court affirmed the judgment of sentence. (Doc. 31-1 at 19-34, <u>Commonwealth v. Johnson</u>, No. 2119 MDA 2013 (Pa. Super. Ct. July 30, 2015)). On August 28, 2015, Johnson filed a petition for allowance of appeal with the Pennsylvania Supreme Court. <u>Commonwealth v. Johnson</u>, No. 661 MAL 2015 (Pa. 2015). On February 3, 2016, the Pennsylvania Supreme Court denied the petition for allowance of appeal. <u>Id.</u>

On April 12, 2016, Johnson filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. § 9541 *et seq.*, collaterally

attacking his conviction. <u>Johnson</u>, No. CP-40-CR-0002713-2011. Counsel was appointed to represent Johnson and subsequently submitted a no-merit letter pursuant to <u>Commonwealth v. Turner</u>, 544 A.2d 927 (Pa. 1988) and <u>Commonwealth v. Finley</u>, 550 A.2d 213 (Pa. Super. Ct. 1988) (*en banc*). <u>Id.</u> On October 31, 2016, the PCRA court held a hearing regarding the motion to withdraw and the PCRA petition. (Doc. 31-1 at 56-66). The PCRA court ultimately granted the motion to withdraw filed by PCRA counsel and denied the petition. <u>See id.</u> Johnson filed a notice of appeal with the Pennsylvania Superior Court. <u>Commonwealth v. Johnson</u>, 2092 MDA 2016 (Pa. Super. Ct.). On August 1, 2017, the Superior Court vacated the PCRA court's decision and remanded the matter for a determination of whether Johnson wished to proceed *pro se* or whether counsel would be appointed for him. (Doc. 31-3 at 10-15, <u>Commonwealth v. Johnson</u>, 2092 MDA 2016 (Pa. Super. Aug. 1, 2017)). The Superior Court noted that although "[Johnson's] 'appellate issues are raised in such a confusing, rambling, incoherent fashion as to be devoid of the slightest discernability,'" he appeared to be denied the right to counsel in his PCRA proceedings, thus necessitating remand. (Doc. 31-3 at 12).

On remand, the PCRA court appointed counsel for Johnson. <u>Johnson</u>, No. CP-40-CR-0002713-2011. However, Johnson requested to proceed *pro se*. The PCRA court held a hearing pursuant to <u>Commonwealth v. Grazier</u>, 713 A.2d 81 (Pa. 1998), wherein Johnson waived his right to counsel. <u>Id.</u> On December 1, 2017, the PCRA court held a hearing on the petition. (Doc. 31-3 at 20-74, 12/1/17 PCRA Hr'g N.T.). At the hearing, Johnson raised three issues: "ineffective assistance of counsel, <u>Brady</u> violation, and after-discovered evidence." (<u>Id.</u> at 72). On January 4,

2018, the PCRA court denied the petition.  <u>Johnson</u>, No. CP-40-CR-0002713-2011.

Johnson filed a notice of appeal with the Pennsylvania Superior Court raising two

issues: (1) ineffective assistance of counsel based on a conflict of interest, and

(2) ineffective assistance of counsel based on a <u>Brady</u> violation/prosecutorial

misconduct.  <u>Commonwealth v. Johnson</u>, 160 MDA 2018 (Pa. Super. Ct.).  On

August 27, 2018, the Superior Court affirmed the PCRA court's decision denying the

petition.  <u>Commonwealth v. Johnson</u>, 2018 WL 4076280 (Pa. Super. Ct. Aug. 27,

2018).  Johnson did not file a petition for allowance of appeal with the Pennsylvania

Supreme Court.

Johnson then filed the instant petition for writ of habeas corpus pursuant to

28 U.S.C. § 2254.  (Doc. 1).  The court construes Johnson's habeas corpus petition as

raising the following claims: (1) prosecutorial misconduct; (2) a due process

violation because he was unable to obtain notes of hearings; (3) ineffective

assistance of counsel because his counsel had a conflict of interest and failed to

raise a <u>Brady</u> violation; and (4) a <u>Brady</u> violation.  (<u>Id.</u> at 5-10).

## II.    <u>Legal Standard</u>

The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A habeas

corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to

challenge the "fact or duration" of his confinement.  <u>Preiser v. Rodriguez</u>, 411 U.S.

475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions."  <u>Estelle v. McGuire</u>, 502 U.S. 62,

67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 68.

**III.  Discussion**

It is first necessary to determine whether Johnson's claims presented in his habeas petition are cognizable in a federal habeas proceeding and whether they have been exhausted in the state courts and, if not, whether the circumstances of his case are sufficient to excuse his procedural default.

**A.  Exhaustion and Procedurally Defaulted Claims—Grounds One and Two**

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.  To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review.  <u>See, e.g.</u>, <u>Castille v. Peoples</u>, 489 U.S. 346, 351(1989); <u>Doctor v. Walters</u>, 96 F.3d 675, 678 (3d Cir. 1996), <u>abrogated on other grounds by</u> <u>Beard v. Kindler</u>, 558 U.S. 53 (2009); <u>Burkett v. Love</u>, 89 F.3d 135, 137 (3d Cir. 1996).  Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion will be considered satisfied.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).  The petitioner has the burden of establishing that the exhaustion requirement has

been met.  <u>Ross v. Petsock</u>, 868 F.2d 639, 643 (3d Cir. 1989); <u>O'Halloran v. Ryan</u>, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claim prior to exhaustion when no appropriate state remedy exists.  <u>Christy v. Horn</u>, 115 F.3d 201, 206 (3d Cir. 1997); <u>Doctor</u>, 96 F.3d at 681; <u>Carter v. Vaughn</u>, 62 F.3d 591, 594 (3d Cir. 1995).  Nevertheless, a petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure.  28 U.S.C. § 2254(c).

Turning to procedural default, if a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted.  <u>Wenger v. Frank</u>, 266 F.3d 218, 223 (3d Cir. 2001); <u>Lines v. Larkins</u>, 208 F.3d 153, 160 (3d Cir. 2000); <u>see</u> <u>Teague v. Lane</u>, 489 U.S. 288, 297-98 (1989).  Although deemed exhausted, such claims are considered procedurally defaulted.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 749 (1991); <u>Lines</u>, 208 F.3d at 160.

A federal habeas court cannot review the merits of a procedurally defaulted claim unless the petitioner meets one of two exceptions.  To satisfy the first exception, a petitioner must show (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure.  <u>Coleman</u>, 501 U.S. at 750.  To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the petitioner's efforts to comply with the state's procedural rule.  <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  Once

"cause" has been successfully demonstrated, a petitioner must then prove "prejudice." "Prejudice" must be something that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494. Alternatively, under the second exception, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a "fundamental miscarriage of justice." See Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000).

Johnson raises prosecutorial misconduct and due process violations in grounds one and two of his habeas petition. (Doc. 1). Specifically, Johnson claims that the prosecution withheld evidence and that he suffered a due process violation because he was unable to obtain notes of hearings. (Id. at 5-7). To comply with the exhaustion requirement of 28 U.S.C. § 2254, Johnson was required to present all his federal habeas claims to the state courts in his direct appeal or in his PCRA proceeding.

Johnson's prosecutorial misconduct claim is different than the claim raised in his PCRA petition. The issue raised in the PCRA proceeding was whether trial counsel was ineffective for failing to report prosecutorial misconduct. This allegation does not include a standalone claim of prosecutorial misconduct. Second, Johnson did not raise, on direct appeal or in his PCRA petition, that he was unable to obtain notes or transcripts of hearings. Because Johnson has not raised either of these claims with the state courts prior to presenting these claims in federal court, the court must determine whether Johnson has any other available state court remedy through which he can present his unexhausted claims.

Under the PCRA, a petitioner may bring a second PCRA petition only if it is filed within one year of the date the judgment becomes final, unless the petition alleges facts that meet one of the requirements set forth in § 9545(b)(1), which Johnson has not. See 42 PA. CONS. STAT. § 9545(b)(1). The Supreme Court of Pennsylvania has held that the PCRA's timeliness requirements are mandatory and jurisdictional in nature; thus, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner. See, e.g., Commonwealth v. Murray, 753 A.2d 201, 202-03 (Pa. 2000).

Consequently, Johnson is precluded from presenting his unexhausted claims in a second PCRA petition based on the time limitations set forth in the PCRA. These time limitations are an independent and adequate state law ground sufficient to invoke the procedural default doctrine for purposes of federal court review. See Lines, 208 F.3d at 165. As set forth above, this court may not review Johnson's defaulted claims unless he demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of justice. McCandless, 172 F.3d at 260. Johnson argues neither cause and prejudice, nor the existence of a fundamental miscarriage of justice in his petition. Therefore, he is not entitled to habeas corpus relief as to grounds one and two.

**B.     Merits—Grounds Three and Four**

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section

2254(d) provides, in pertinent part, that an application for a writ of habeas corpus

premised on a claim previously adjudicated on the merits in state court shall not be

granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or

> (2) [the decision] was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is

not sufficient for the petitioner to show merely that his interpretation of Supreme

Court precedent is more plausible than the state court's; rather, the petitioner must

demonstrate that Supreme Court precedent requires the contrary outcome."

Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court

will only find a state court decision to be an unreasonable application of federal law

if the decision, "evaluated objectively and on the merits, resulted in an outcome that

cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume

that a state court's findings of fact are correct.  A petitioner may only rebut this

presumption with clear and convincing evidence of the state court's error.  Miller-El

v. Cockrell, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in

§ 2254(e)(1) applies to factual issues, whereas unreasonable application standard of

§ 2254(d)(2) applies to factual decisions); Matteo, 171 F.3d at 888; Thomas v. Varner,

428 F.3d 492, 497-98 (3d Cir. 2005).  This presumption of correctness applies to both

explicit and implicit findings of fact.  Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir.

2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." Breighner v. Chesney, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Porter, 276 F. Supp. 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. at 408-09.

### 1. *Ground Four—Brady Claim*

Johnson argues that the Commonwealth committed a Brady violation at trial when it failed to disclose that Justin Barna, the victim, was a confidential informant in another criminal case against Johnson. (Doc. 1 at 9).

In Brady, the United States Supreme Court held that the due process rights of a defendant are violated when the prosecution withholds favorable, material evidence from the defense. Brady, 373 U.S. 83. To prove a Brady violation, the petitioner bears the burden of demonstrating that "(1) the prosecutor suppressed evidence; (2) the evidence, whether exculpatory or impeaching, was helpful to the [petitioner;] and (3) the suppression prejudiced the [petitioner]." Commonwealth v. Collins, 888 A.2d 564, 577-78 (Pa. 2005) (citing Brady, 373 U.S. at 83). To establish prejudice, the petitioner must prove that there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Commonwealth v. Paddy, 15 A.3d 431, 450 (Pa. 2011).

Against this backdrop, the PCRA court[1] considered Johnson's claim that the Commonwealth violated Brady by failing to disclose that Justin Barna, the victim in the underlying case, was a confidential informant in another case pending against Johnson. (Doc. 31-4 at 18-25, Commonwealth v. Johnson, Nos. 2713 of 2011, 2092 MDA 2016). In the other criminal case, Johnson allegedly sold drugs to Barna, who was a confidential informant against Johnson. (Id.) Regarding the assault case,

_____

[1] On appeal from the PCRA court, the Pennsylvania Superior Court adopted the PCRA court's reasoning and affirmed the order of the PCRA court. (Doc. 31-4 at 10-27, Commonwealth v. Johnson, Nos. 2713 of 2011, 2092 MDA 2016; Commonwealth v. Johnson, 2018 WL 4076280 (Pa. Super. Ct. Aug. 27, 2018)). The PCRA court's opinion will be the primary reference point in addressing Johnson's exhausted claims in the instant habeas petition. See Simmons v. Beard, 590 F.3d 223, 231-32 (3d Cir. 2009) (in considering a § 2254 habeas petition, the federal court must review the "last reasoned decision of the state courts on the petitioner's claims" (citing Bond v. Beard, 539 F.3d 256, 289-90 (3d Cir. 2008)).

trial counsel testified at the PCRA hearing that she did not file for disclosure of a confidential informant because it was irrelevant if not harmful to the defense case-in-chief. (Doc. 31-3 at 47, N.T. 28:5-21). Specifically, trial counsel testified that the intended defense was that Johnson could not have stabbed Barna because he did not know him, and that introducing any evidence of a drug-dealing relationship between Johnson and Barna, even one that postdated the alleged assault, could have undermined that defense. (Id. at 55-56, N.T. 36:24-37:15).

After summarizing trial counsel's testimony, the PCRA court found that Johnson had neither substantiated a <u>Brady</u> violation nor shown prejudice flowing from the Commonwealth's failure to disclose Barna as a confidential informant in another matter. (<u>See</u> Doc. 31-4 at 24, <u>Commonwealth v. Johnson</u>, Nos. 2713 of 2011, 2092 MDA 2016)). The PCRA court's analysis of the claimed <u>Brady</u> violation is spare but clear enough for our purposes: in concluding that Johnson "has not substantiated a <u>Brady</u> violation nor has he been prejudiced," (<u>see</u> <u>id.</u>), the court necessarily adopted trial counsel's rationale that presenting evidence of Johnson's relationship with Barna (1) would have undermined the defense theory that Johnson did not know Barna, (2) would have prejudiced the jury against Johnson based on his connection to another criminal case, and (3) would have been patently irrelevant since the alleged drug interaction between Johnson and Barna occurred after the assault charged in the underlying case, (<u>see</u> <u>id.</u> at 19-24). We cannot say that this conclusion was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Nor has Johnson demonstrated that the PCRA court's decision was based

on an unreasonable determination of the facts in light of the evidence.  Therefore, we will deny this claim.

### 2.    *Ground Three—Ineffective Assistance of Trial Counsel*

Johnson raises the following two exhausted ineffective assistance of trial counsel claims: (1) his attorney had a conflict of interest; and (2) his attorney failed to raise a Brady issue because the Commonwealth did not disclose the identity of a confidential informant.  (Doc. 1 at 8-10).

The Sixth Amendment right to counsel is the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  This right to effective assistance of counsel also extends to the first appeal.  Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).  In Strickland, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel.  Strickland, 466 U.S. at 687-88.  A petitioner must demonstrate that (1) his counsel's representation "fell below an objective standard of reasonableness" and (2) such defective performance caused the petitioner prejudice.  See id.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct.  Id. at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  Id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").  "Strickland and its progeny make clear that counsel's strategic choices will not be second-guessed by

post-hoc determinations that a different trial strategy would have fared better."
Rolan v. Vaughn, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing Strickland, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. Strickland, 466 U.S. at 691; United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. See Thomas, 428 F.3d at 502.

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the Strickland test. Carpenter v. Vaughn, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. Strickland, 466 U.S. at 697.

### a.    **Trial Counsel's Conflict of Interest**

Johnson's first claim is that his trial counsel was ineffective because she had a conflict of interest. (Doc. 1 at 8). The PCRA court's findings concerning this issue, as adopted by the Superior Court, are as follows:

First, Johnson was charged in unrelated Information # 2553-2012 with violations of the Drug Act that were alleged to have occurred on May 31, 2012 wherein Justin Barna was the confidential informant for the Commonwealth.  Attorney Allyson Kachmarski was allowed to withdraw her appearance for the Defendant in Information # 2553-2012 and Attorney Mark Bufalino was appointed by the Court on June 24, 2013 to represent Johnson in that case.  The withdrawal of appearance in Information # 2553-2012 was granted as Attorney Kacmarski indicated to the court that she had represented Ramon Aziz Leonard at his preliminary hearing who had been charged with similar offenses under Information # 2550-2012 and was consolidated for trial with Mr. Johnson under Information # 2553-2012.  Johnson argued that this withdrawal under Information # 2553-2012 may have prejudiced his trial under the above Information # 2713-2012 as Attorney Kacmarski was trial counsel therein.  (N.T[.] 7-8).

. . .

As to Johnson's first issue that Attorney Kacmarski was allowed to withdraw representation under Information # 2553-2012 and continue representing him at jury trial on instant Information # 2713-2011 the court finds no arguable merit cognizable under the PCRA statute.  Although Attorney Kacmarski indicated that she had a conflict under Information # 2553-2012 as Johnson was joined for trial with Ramone Leonard, an individual whom Attorney Kacmarski represented at the preliminary hearing and identified a conflict of interest, Attorney Kacmarski did indicate that she had no conflict or impediment from zealously representing Johnson at trial in Information # 2713-2011.  (N.T. 21).  The court finds no ineffective assistance of counsel provided by the representation of Attorney Kacmarski under the instant Information and further finds that as there was a valid basis to allow her withdrawal under Information # 2553-2012 which cause did not cause any adverse effect on trial of the instant information.  Johnson has not developed any purported rational argument regarding this contention.

The court finds no merit in Johnson's claim that his defense and representation was prejudiced by Attorney Kacmarski's withdrawal from representation in an unrelated matter pending against Johnson. Commonwealth v. Buehl, 508 [A].2d 1167 (P[a.] 1986).  Having presided at the trial the court is aware that counsel vigorously represented Johnson at trial.  Commonwealth v. King, 57 A.3d 607 (Pa. 2012).

(Doc. 31-4 at 15-18, Johnson, Nos. 2713 of 2011, 2092 MDA 2016).

The PCRA court concluded that trial counsel's withdrawal of appearance in another criminal case did not cause any adverse effect on Johnson's trial in the underlying criminal matter. (Id.) Trial counsel testified that her only conflict of interest occurred in Johnson's other criminal case, not in the assault case. (Doc. 31-3 at 40, N.T. 21:1-24). Counsel further testified that she did not perceive any conflict of interest in the assault case. (Id.) The PCRA court therefore found that trial counsel had a legitimate basis for withdrawing as counsel in the other criminal matter, but did not have any conflict in the present, underlying case. Additionally, the PCRA court noted that trial counsel "vigorously represented Johnson at trial" and found no merit in this ineffective assistance of counsel claim. (Doc. 31-4 at 18, Johnson, Nos. 2713 of 2011, 2092 MDA 2016).

Upon review of the record, this court concludes that the disposition of Johnson's instant claim did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. In other words, Johnson has failed to establish either legal or factual infirmity in the PCRA court's findings that counsel's failure to move to withdraw was reasonable, that Johnson was not prejudiced thereby, and that counsel thus did not provide ineffective assistance. Accordingly, Johnson is not entitled to habeas relief on this claim.

### b.  Trial Counsel's Failure to Raise a Brady Claim

Johnson's next ineffective assistance of counsel claim is for trial counsel's failure to raise a Brady violation based on the Commonwealth's failure to disclose

the identity of a confidential informant. (Doc. 1 at 8). In addressing this issue, the

PCRA court, as adopted by the Superior Court, provided the following:

> Johnson[']s[] second issue concerns his allegation that the
> Commonwealth did not disclose the identity of confidential informant
> (Justin Barna) in Information # 2553-2012 to trial counsel under the
> instant PCRA information. Johnson was represented by court
> appointed counsel in Information # 2553-2012.
>
> To prove a Brady violation as stated in Commonwealth v. Bomar, 104
> A.3d 1179 (Pa. 2014)[]: Appellant must demonstrate that: (1) the
> prosecution concealed evidence; (2) which evidence was either
> exculpatory or impeachment evidence favorable to him and; (3) he was
> prejudiced by the concealment. Commonwealth v. Paddy, 800 A.2d 294
> (2002); Strickler v. Greene, 527 U.S. 263 (1999). In order to prove
> prejudice, Appellant must show a "reasonable probability that, had the
> evidence been disclosed to the defense, the result of the proceeding
> would have been different." Commonwealth v. Burke, 781 A.2d 1136
> (2001). Stated differently, the undisclosed evidence must be "material
> to guilt or punishment." Paddy, 800 A.2d at 305. Further,
> impeachment evidence which goes to the credibility of a primary
> witness against the accused is critical evidence and it is material to the
> case whether that evidence is merely a promise or an understanding
> between the prosecution and the witness[.]" Commonwealth v.
> Strong, 761 A.2d 1167 (2000). Mere conjecture as to an agreement
> between the prosecution and witness is insufficient to establish a
> Brady violation. Commonwealth v. Chmiel, 30 A.3d 1111 (2011).
> Finally, we note that "there is no Brady violation when the appellant
> knew, or with reasonable diligence, could have uncovered the evidence
> in question." Commonwealth v. Paddy, 15 A.3d 431 (2011).
>
> At the PCRA hearing Johnson asked Attorney Kacmarski if she was
> aware that the alleged victim in the instant case worked as a
> confidential informant in another case against him.
>
>> The Witness: I think the answer would be based upon
>> discussions that myself and Mr. Johnson had as counsel, I
>> mean, nothing as far as the disclosure of Mr. Barna being the
>> CI came from the Commonwealth. And, like I said, I didn't file
>> any disclosure of CI because I wasn't representing him on that
>> case, and that particular part would not have been relevant in
>> the trial. To be quite honest, it would have been - - it wouldn't
>> have been to Mr. Johnson's benefit to talk about another prior

alleged drug interaction.  It could have caused the jury to hold -
- it could have caused the jury to be prejudicial in the case.

So maybe from my discussions with Mr. Johnson I was aware
of individuals and actions in other cases, but legally speaking
there was no actual filing of a motion to disclose CI, nor was
that hearing held, [b]ecause, one, it wasn't relevant to the trial
and, two, it wasn't - - I was not the attorney of record on that
case at this point in time.  (N.T. 27-28).

BY THE DEFENDANT:

Q. Now, Ms. Allyson Kacmarski, would you think that with this
mindset right here of withholding evidence changes all
credibility, would it not have been a better alternative to attack
the alleged victim's credibility of him displaying prosecutorial
misconduct working against me and showing that it's some
type of dishonesty with this person in which the District
Attorney's Office did withhold his identity from another case in
which you was not aware of?

A. My concern would have been for you that if the jury heard
about another interaction where you allegedly sold drugs to
Mr. Barna after the assault, I think that that's not good for you
in the eyes of the jury and that it would have caused them to
find you guilty, I mean, even though they did find you guilty,
but I don't - - as far as your defense going forward, it wouldn't
have been beneficial to talk about another drug case
interaction with you and Mr. Barna.  Ultimately, that happened
after the assault, so it's not relevant to the trial.

Q. Okay.  If you were representing me to the best of your
ability, aren't you supposed to do what I ask you to do?

A. No. I'm supposed to do what's in your best interest.  I don't
do everything you tell me to do.

Q. Well, if I wanted you to do something and you don't do it, is
that not ineffective assistance of counsel?

A. No.

The Witness: No, it's not ineffective assistance of counsel.  My
job—you as the Defendant have the decision to go to trial or
plead guilty, and then you have the decision during the trial to

testify or not testify. As to your defense and what would be beneficial to seeking a not guilty conviction, those are decisions that I would make. Just because you want something, it may not be beneficial to you and it could cause you to get convicted. So as to how the Defense would proceed during trial are decisions that I would make that would be to your benefit.

BY THE DEFENDANT:

Q. Okay, Now my question is, if you are aware of any prosecutorial misconduct or mis-character(sic) of justice that had occurred in the case, wouldn't it be fair in all due respect of effectively representing me to report it to the courts?

A. If there was prosecutorial misconduct going on, I would have reported it to the Court, but there wasn't in this - - in this particular docket trial.

At the PCRA hearing, the Assistant District Attorney further queried.

BY MR. SCOTT:
As trial counsel, is it your testimony that bringing up the CI would not have materially positively affected Mr. Johnson's case?

The Witness: Correct. My recollection of the defense was, obviously, that Mr. Johnson did not stab Mr. Barna. That it could have been someone else. Showing that after the alleged assault they continued to have contact or that Mr. Johnson allegedly continued to sell drugs would not have looked good for him because it would have looked in the eyes of the jury that Mr. Johnson was a drug dealer. And it would have furthered the Commonwealth's case more than it would have helped Mr. Johnson.

So bringing up anything about subsequent drug sales with Mr. Barna would have prejudiced Mr. Johnson and could have ultimately added on to the guilty conviction.

So in my opinion, since the defense was he did not do it - - and I don't recall exactly what I said as to whether they knew each other or didn't, I'd have to review the transcript, but ultimately to further the defense that Mr. Johnson was innocent, it would not have been good to bring up any other alleged drug dealing matters. (N.T. 36-37).

BY THE DEFENDANT:

Q. Your proposition today is that you could not have used this to discredit the alleged victim in the case?

A. My recollection of the defense was that - - like I said, I have not reviewed the trial transcript, but my recollection is that you didn't know Mr. Barna, so then you couldn't have stabbed him, that somebody else stabbed him. So using documents that would show the two of you had a relationship would have furthered the Commonwealth's argument that he recognized you because he was buying drugs from you.

Q. Is that a defense that you - -

A. The Commonwealth's prosecution.

Q. Is that a defense that you spoke to me about or a defense that you came up with by yourself?

A. No, we spoke about it, because initially when you had, I believe, Attorney Webby, you were going to proceed under an alibi defense. We had spoken about that none of your alleged alibi witnesses were going to come in and testify. Because that was initially what was going to go further, was that you weren't there that day.

I think the ultimate concern is the Commonwealth, from my recollection, was that you were a drug dealer and you were selling drugs to Mr. Barna. So that's not good. So our defense was that you didn't know Mr. Barna and that somebody else could have stabbed him. So anything that ties you and Mr. Barna together that you're selling him drugs is not going to be good for you at trial.

BY THE DEFENDANT:

Q. So your proposition today is, it was better - - in my best interest to keep concealed what happened to me, what the alleged victim did in Case No. 2553-2012, in the midst of the litigation.

The Witness: Yes. The concern is that we wouldn't want the jury to think that you were a drug dealer and then wrongfully convict you because they think you're out selling drugs. We

don't want any other crimes other than the allegation that the Commonwealth has to prove coming in to the trial so that the jury doesn't use other facts to determine you guilty. That they just look at what the Commonwealth has alleged you did, and in that case it was that you stabbed Mr. Barna. We don't want other matters, that maybe you're out selling drugs, coming into to the case.

BY THE DEFENDANT:

Q. Okay. Now my question is, before trial even took place, could you have brought this prosecutorial misconduct to the judge's attention before it even reached to the jury or trial started as outrageous government misconduct?

A. Well, I think - - Mr. Barna was not a confidential informant in the trial case. His identity was disclosed. Whether or not they disclosed it in 2553-2012 would be a different matter because in that case he was deemed a CI. So it's two different cases.
So in the case that I represented you on, his identity was that he was the victim. In the other case he was considered a CI, and if they didn't disclose it in that case that's a different argument. But that's not for the case that you went to trial on.

Q. Wouldn't it be relevant for his identity to be disclosed at the other case so that you could know if any prosecutorial misconduct have occurred during the midst of litigation so that you could bring it to the Court's attention?

A. Well, in that case I wasn't - - I didn't - - I didn't continue to represent you on that case. So that's a different matter. That's not for purpose of today. Because we knew who Mr. Barna was, he was the victim. (N.T. 39-43).

In sum, there are three necessary components to demonstrate a <u>Brady</u> violation:

The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the state, either willfully, or inadvertently; and prejudice must have ensued. <u>Commonwealth v. Causey</u>, 833 A.2d 165 (Pa. Super. 2003) citing, <u>Strickler v. Greene</u>, 527 U.S. 263 (1999). Johnson has not substantiated a violation nor has he been prejudiced.

The Pennsylvania test for ineffectiveness of counsel is, in substance the same as the two part performance and prejudice standard set forth by the United States Supreme Court, see Strickland v. Washington, 466 U.S. 668 (1984) although this court has divided the performance element into two sub-parts dealing with arguable merit and reasonable strategy. Thus, to succeed on an ineffectiveness claim, a petitioner must establish that the underlying legal claim has arguable merit; counsel had no reasonable basis for her action or inaction; and the petitioner suffered prejudice as a result. See Commonwealth v. Pierce, 527 [A].2d 973 (1987). To demonstrate prejudice the petitioner must show that there is a reasonable probability that but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. See Commonwealth v. Ali, 10 A.3d 282 (2010). As cited in Commonwealth v. King, 57 A.3d 607 (Pa. 2012).

Because counsel is presumed to be competent, it is ordinarily the defendant's burden to demonstrate that a constitutional violation has occurred. King, Supra.

Counsel provided effective representation at trial.

(Doc. 31-4 at 18-25, Johnson, Nos. 2713 of 2011, 2092 MDA 2016).

In evaluating whether counsel's performance was deficient, courts must defer to counsel's tactical decisions, avoid "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. Strickland, 466 U.S. at 689. We have already determined that the PCRA court did not unreasonably apply federal law in concluding that Johnson failed to establish a Brady violation. It necessarily follows that the PCRA court did not unreasonably apply federal law in concluding that, given the lack of merit in Johnson's Brady claim, counsel could not be deemed ineffective for failing to raise that claim before the trial court. Moreover, Johnson has not shown the PCRA court's implicit conclusion—that trial counsel's explanation for her strategic decision not to highlight a potential link between

Barna and Johnson was reasonable, see supra at 12-13—was contrary to or based on an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented.  For these reasons, the court will deny this ineffective assistance of counsel claim.

## IV.    Johnson's Request for an Evidentiary Hearing

Before AEDPA, the general rule concerning habeas evidentiary hearings was set forth in Townsend v. Sain, 372 U.S. 293 (1963).  Except as modified by AEDPA, "[t]hat basic rule has not changed."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007). In Townsend, the Supreme Court enumerated six specific circumstances in which a federal habeas court must grant an evidentiary hearing:

> [i]f (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

Townsend, 372 U.S. at 313.  Townsend leaves intact the district court's discretion to conduct an evidentiary hearing in other circumstances.

If an evidentiary hearing is potentially implicated, AEDPA also incorporates certain limitations: "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  Schriro, 550 U.S. at 474 (citing Mayes v. Gibson, 210 F.3d 1284, 1287-88 (10th Cir. 2000)).  A habeas court must consider the prohibition on evidentiary hearings in 28 U.S.C.

§ 2254(e)(2).  Under this section, a habeas court is barred from holding an evidentiary hearing unless the petitioner was diligent in his attempt to develop a factual basis for his claim in the state court proceedings, see Williams, 529 U.S. at 429-30, or the petitioner satisfies the criteria set forth in 28 U.S.C. § 2254(e)(2)(A) and (B).[2]  See Goldblum v. Klem, 510 F.3d 204, 220 (3d Cir. 2007) (under AEDPA, except for the allowances provided in § 2254(e)(2), if state prisoner "has developed the factual basis of his claims in the state court, he is not entitled to a federal evidentiary hearing").

Importantly, § 2254(e)(2) is limited to evidentiary hearings on "a claim" and does not apply to other relevant evidentiary matters, *e.g.*, establishing cause and prejudice or a miscarriage of justice to excuse a procedural default.  See Holloway v. Horn, 355 F.3d 707, 716 (3d Cir. 2004) ("[I]t is within a District Court's authority to

---

[2]  28 U.S.C. § 2254(e)(2) provides:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

grant a hearing on a petitioner's ability to establish cause to excuse a procedural default, and therefore § 2254(e)(2) is inapplicable to those hearings." (citing <u>Cristin v. Brennan</u>, 281 F.3d 404, 412-13 (3d Cir. 2002)). The decision to hold an evidentiary hearing on excuses for procedural default is within the discretion of the district court, regardless of whether the petitioner was diligent in developing facts relating to "cause and prejudice." <u>Cristin</u>, 281 F.3d at 418-19.

Here, Johnson requests an evidentiary hearing regarding an adverse decision by the Pennsylvania Board of Probation and Parole. (Doc. 38). In the alternative, he seeks release on parole. (<u>Id.</u>) Because his demand is not premised on a claim falling within the ambit of § 2254(e)(2), Johnson has failed to establish that he is entitled to an evidentiary hearing, and we will deny his request for a hearing.

## V.    <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. 322. Because reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA. Thus, the court declines to issue a certificate of appealability, as Johnson has failed to demonstrate "a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## VI.   Conclusion

The court will deny Johnson's application (Doc. 1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and deny his request (Doc. 38) for an evidentiary hearing.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:      June 22, 2021